UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL FRAZEE,                                    Case No. 1:06-cv-811

        Plaintiff,                                Judge Weber
                                        Magistrate Judge Black

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-
DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL
EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF
PLAINTIFF AWARDING BENEFITS AS OF AUGUST 1, 1998;
AND (3) THIS CASE BE CLOSED.**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue

is whether the administrative law judge ("ALJ") erred in finding plaintiff "not disabled"

and therefore unentitled to a period of disability and disability income benefits ("DIB")

(*See* Administrative Transcript ("Tr.") (Tr. at 14-27) (ALJ's decision)).

**I.**

Plaintiff filed an application for DIB on January 21, 1995, alleging that he was

disabled beginning on October 31, 1994. He was found disabled based on his mental

impairments and entitled to disability benefits. However, in May 1998, the Agency found

that plaintiff was no longer entitled to DIB, and his benefits ceased. (Tr. 398).[2]

Thereafter, plaintiff filed another application for disability benefits in October

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] The Agency ceased plaintiff's benefits because he failed to attend a consultative examination as part of his continuous disability review. (Tr. 398-403.). Plaintiff, however, maintains that his benefits ceased after he attempted to return to work.

1999, alleging an onset date of August 1, 1998, due to a combination of mental and physical impairments, including depression and chronic back pain caused by degenerative disc disease . (Tr. 63-65.)  That application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ.  Evidentiary hearings, at which plaintiff was represented by counsel, were held on April 26, 2001 and October 16, 2001.

Thereafter, on November 19, 2001, the ALJ issued a decision denying plaintiff's claim.  (Tr. 14-27.)  On October 18, 2002, the Appeals Council denied further review. Plaintiff then timely appealed.  On March 4, 2004, Magistrate Judge Sharon Ovington issued her Report and Recommendation ("R&R") remanding plaintiff's claim for further consideration because the ALJ failed to rule on plaintiff's request for reopening his prior decision, or, in the alternative, having re-opened the prior decision, failed to apply the correct legal standard.  The R&R was adopted, and the matter was remanded for further proceedings.

ALJ Deborah Smith conducted three additional remand hearings on May 9, 2005, October 24, 2005, and February 13, 2006.  (Tr. 529-578.)  Plaintiff did not attend the October or February hearing upon the advice of his treating doctor and therapist because of the undue stress on his mental health.  (Tr. 459, 528.)  Vocational expert, Janet Rogers, and medical expert, Dr. Clyde Henderson, an orthopedic specialist, both offered testimony at the October and February hearings.  (Tr. 548, 578, 581, 594.).

On May 25, 2006, ALJ Smith issued a decision denying plaintiff's claim.  That decision stands as defendant's final determination consequent to denial of review by the

Appeals Council on August 17, 2006. (Tr. 366-369.)

The ALJ's "Findings," which represent the rationale of the decision, were as

follows:

1. The claimant's request to reopen and revise the prior determination ceasing his benefits is denied.

2. The claimant met the insured status requirements of the Social Security Act through December 31, 1999. Therefore the period of disability at issue is whether the claimant was disabled from August 1, 1998 through his last date insured of December 31, 1999.

3. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520 (b) and 404.1571 *et seq.*).

4. The claimant has the following severe impairments: degenerative lumbar disc disease and depression (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404m Subpart P, Appendix 1 (20 CFR 404.1520(d), and 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; stand and/or walk a total of 6 hours and sit a total of 6 hours (with normal breaks); never climb ladders, ropes, and scaffolds; occasionally climb ramps/stairs, stoop, and crouch; and frequently balance, kneel, and crawl. He has no manipulative or environmental limitations. The claimant's hearing is not acute but is adequate for conversational voice with his hearing aids. The claimant can understand, remember, and carry out simple, routine, repetitive jobs that do not require a great deal of reading. His ability to relate to coworkers, supervisors, and the general public is fair so he should not deal with the public. His tolerance for work-related stress is moderately impaired but he would be capable of routine work.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565)

8. The claimant was born on November 2, 1955 and was 42 years old on the alleged disability onset date, which is defined as a younger individual 45-49

3

(20 CFR 404.1563). The claimant is now approaching advanced age at 50 years old.

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability as of the onset date, due to the claimant's age (20 CFR 404.1568).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566.)

12. The claimant has not been under a "disability," as defined in the Social Security Act, from August 1, 1998 through the date of this decision ((20 CFR 404.1520 (g)).

(Tr. 386-392.)

In summary, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DBI.

On appeal, plaintiff maintains that: (1) the ALJ erred in applying the medical improvement standard; (2) the ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating physician; (3) the ALJ erred in evaluating plaintiff's physical limitations; and (4) the ALJ erred in to give any weight to the disability finding of the Ohio Bureau of Worker's Compensation. For the reasons that follow, the undersigned finds that the ALJ's nondisability finding is not supported by substantial evidence and hereby recommends that the ALJ's decision be reversed and remanded for an award of benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden

of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at \*2 n.1 (6th Cir. Sept. 16, 1999) (per curiam). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**III.**

At the outset, plaintiff asserts that the ALJ implicitly reopened the initial case terminating plaintiff's benefits and, therefore, the ALJ erred by failing to apply the medical improvement standard as defined by the regulations.

The Commissioner asserts, however, that the ALJ did not reopen the previous determination. To the contrary, the ALJ explicitly denied plaintiff's request to reopen the prior determination. (*See* Tr. 383-86.). An ALJ's ruling to deny a request for reopening is not subject to judicial review, absent a constitutional claim. *Califano v. Sanders*, 430

U.S. 99, 107-08 (1977).  Here, plaintiff has not raised a constitutional challenge to the ALJ's denial of his request to reopen.  Accordingly, the ALJ properly applied the five-step sequential analysis.

In any event, the undersigned finds that plaintiff's assertion that the ALJ erred in weighing the medical evidence to be well-taken.  Specifically, plaintiff maintains the ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating physicians, Dr. Leeds, Dr. Heindl and Dr. Vivian, that he is disabled.  Plaintiff further asserts that such disability determinations are supported by plaintiff's prior determination of disability, his treatment history, and the reports from his workers' compensation claims. In addition, plaintiff argues the ALJ selectively reviewed the evidence of record and erred in putting more weight on the physical aspects of this case.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); s*ee also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983).  If a treating

physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). If a treating physician's opinion is contradicted by substantial evidence, the opinion is not to be dismissed, and it is still entitled to deference. *Roush*, 326 F.Supp. 2d at 862; *see also* 20

C.F.R. § 404.1527(d)(2)-(6).

Should the ALJ reject a treating physician's opinion, the ALJ must "give good reasons" for not giving weight to that opinion in the context of a disability determination. *Wilson*, 378 F.3d at 544.  A ruling issued by the SSA explains that, pursuant to 20 C.F.R. § 440.1527(d)(2), a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (1996); *see also Wilson*, 378 F.3d at 544.

Here, in November 1999, Dr. Heindl, plaintiff's primary care physician, opined that plaintiff has been disabled at least since 1994 due to herniated disc in the lumbar spine.  (Tr. 140.)  Plaintiff commenced treatment with Dr. Heindel in 1996, and his disability finding was supported by the MRI results from Dr. Kramer, a neurosurgeon. On October 1999, Dr. Kramer's analysis of plaintiff's MRI scan noted that "there is some bulging at all levels including some stenosis and bulging at the L4-5 level which has increased since 1995."  (Tr. 138.)  Dr. Kramer further stated "I don't know if there's anything that we can offer [plaintiff] in the near further that will result in any significant improvement in his pain."  (Tr. 139.)

During 2000 and 2001, plaintiff treated with Dr. Frederick Leeds for depression with suicidal ideation, chronic pain syndrome, adult ADHD, headaches, high blood

pressure, and general health problems.  Plaintiff often appeared anxious and tearful.  (Tr.

183, 185).  Dr. Leeds noted plaintiff's chronic pain syndrome due to spinal

stenosis/multilevel disc disease, as well as burning sensation in his legs, chronic

numbness in his legs and thighs, tingling in the legs, weakness, and antalgic gait.  (Tr.

183, 184, 184, 185, 188, 195, 200).  He also complained of diffuse joint pain in his hands.

(Tr. 193).

        In February 2000, Dr. Leeds completed a questionnaire in which he opined that

plaintiff was unable to work due to chronic, severe pain, debilitating depression, and an

inability to carry out routine tasks at home and in public.  (Tr. 219-222.)  Dr. Leeds noted

that plaintiff suffered from "very severe" right knee and low back pain with radiation.

(Tr. 219.)  He also listed severe numbness and paresthesias in his left lateral thigh and

muscle spasms.  Dr. Leeds also noted that plaintiff suffered from severe depression,

which restricted his ability to relate to others.

        Looking at the record as a whole, plaintiff's treatment history reveals that he has

consistently complained of severe and chronic back pain, as supported by the treating

physicians' records, with significant symptoms including numbness in his right leg and

pain across the dorsum of both feet, and tenderness and spasm in the lumbar musculature

with decreased range of motion.  Objective findings include radiculopathy, disc bulging,

markedly antalgic gait, marked trigger point areas, narrowing at L4-5 and L5-S1,

discogenic changes at L3-4, L4-5 and L5-S1 with a midline bulge and stenosing effect,

facetal arthropathy and multi-level discogenic changes, positive straight leg raising and

bow string signs, loss of signal of the L3-4 through L5-S1 discs, bulging at all levels with

some stenosis and bulging at the L4-5 level, central herniation at L5-S1, stenosis of the

central canal, and disc herniation at the L3-4 level.  (Tr. 129, 130, 132, 135, 137, 140,

147, 155, 253, 256).

With respect to plaintiff's mental impairments, plaintiff began treating with Dr.

Rodney Vivian and Philip Berne, LISW, in January 2000, after he was admitted to

Clermont Mercy Hospital with suicidal ideation.  Plaintiff's stayed in the hospital for five

days, and he was diagnosed with major depression and back pain, and was assigned a

GAF score of 30.[3]

In September 2000, Dr. Vivian completed an RFC assessment wherein he

diagnosed major depression and chronic pain with extreme irritability and unrelenting

pain.  (Tr. 260.)  Dr. Vivian found that plaintiff's ability to relate to others, deal with the

public, and deal with work stresses was rated as "poor/none."  He further noted that

plaintiff's anxiety and depression impaired his concentration, and that stress tolerance and

poor attention limited his ability to perform three-stop operations.  Dr. Vivian concluded

that plaintiff's condition would cause him to miss work about three times per month.  (Tr.

---

[3]  As the Sixth Circuit instructs:

> A GAF score is a subjective determination which represents "the clinician's
> judgment of the individual's overall level of functioning."  American Psychiatric
> Assoc., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-
> IV), (4th ed. 1994), p. 30.  The GAF score is taken from the GAF scale which "is
> to be rated with respect only to psychological, social, and occupational
> functioning."  Id.  The GAF Scale ranges from 100 (superior functioning) to 1
> (persistent danger of severely hurting self or others or persistent inability to
> maintain minimal personal hygiene or serious suicidal act with clear expectation
> of death).Rutter v. Commissioner of Soc. Sec., No. 95-1581, 1996 WL 397424,
> at *1 (6th Cir. July 15, 1996).

A GAF score of 30 indicates a severe impairment which may require inpatient care.

260.)  Based on Dr. Vivian's RFC, the vocational expert testified that plaintiff was

unemployable.  (Tr. 344.)

In May of 2001, plaintiff complained of a lot of depression.  Mr. Berne's office

notes evidence a decline in grooming and that Plaintiff was upset and tearful.  In June of

2001, plaintiff mentioned having suicidal thoughts.  (Tr. 293).  In a report dated May 14,

2002, Dr. Vivian diagnosed Major Depressive Disorder, recurrent, ADHD, back pain with

severe psycho-social stressors, and assigned a GAF of 55.  (Tr. 305).  Dr. Vivian stated

that plaintiff was totally disabled and unable to work at any job due to his psychiatric

condition, characterized by significantly depressed mood, extreme inability to tolerate

frustration or stress, poor ability to relate with authority figures, irritability, anxiety, and

suicidal ideation.  (*Id.*).

Additionally, On June 29, 2001, plaintiff was referred to Dr. Gordon Harris by

Workers' Compensation for an independent medical examination to assess his

psychological functioning.  Upon exam, plaintiff's eyes were extremely red and

bloodshot (due to lack of sleep per plaintiff), his affect was flat and constricted, his mood

was angry, and his pace was slow.  He stated that his back injury from 1986 destroyed his

life. Plaintiff described ongoing suicidal thoughts, feeling depressed all the time, chronic

anxiety, sleeping difficulties, change in appetite, and low energy.  Dr. Harris concluded

that the severity of plaintiff's disorder had reached the criteria for Major Depressive

Disorder and felt that plaintiff was incapable of functioning in any gainful employment

due to his psychological and physical impairments.  (Tr. 301).[4]

However, in arriving at plaintiff's RFC for light work, the ALJ relied on the

December 22, 1999 assessment from a state agency physician.  (Tr. 24, 173-81, 391).

The ALJ also gave significant weight to the opinion of Dr. Henderson, an orthopedic

surgeon and medical expert, who also found plaintiff capable of performing light work.

With respect to plaintiff's mental limitations, the ALJ gave controlling weight to the

findings of Dr. Rosenthal and Dr. Sexton, one-time consultative examining psychologists.

(Tr. 24, 157-62, 223-27, 389.)[5]  The ALJ noted plaintiff's drug seeking behavior and

exaggeration of his complaints, and then broadly rejected the opinion of plaintiff's

treating sources, finding that they were "generally unreliable" because they were based on

plaintiff's complaints rather than on objective findings.  (Tr. 194, 200, 226, 256, 279, 304,

389-91.)[6]

In making these findings, however, the ALJ failed to properly evaluate the

opinions of plaintiff's treating sources and engaged in a selective consideration of the

---

[4]  A Workers' Compensation hearing was held on June 5, 2002.  Based on the reports of Drs. Vivian, Harris, and Manges, all of which stated that plaintiff was incapable of remunerative employment, it was determined by the State of Ohio's Bureau of Workers Compensation that plaintiff was permanently and totally disabled.  (Tr. 491-492).

[5]  Dr. Sexton diagnosed ADD and degenerative disc disease, with a GAF of 55.  Dr. Sexton limited plaintiff to simple, repetitive-type tasks, and his ability to tolerate the daily stress and pressure of work was judged to be fair. (Tr.157).  Dr. Rosenthal diagnosed major depression, recurrent; chronic pain syndrome, arthritis, and degenerative disk disease, with a GAF of 55.  Dr. Rosenthal concluded that plaintiff's ability to tolerate the stress of day-to-day employment appeared moderately impaired.  *See* DSM-IV at 32 ( DSM-IV categorizes individuals with scores of 51-60 as having "moderate" symptoms.)

[6]  The ALJ's decision incorporated the analysis of the medical opinions set forth in the November 2001 decision.  (Tr. 389.)

13

medical evidence, specifically focusing on plaintiff's alleged drug-seeking behavior and physical impairments.  *See Wilson, supra*, 378 F.3d at 544; *see also Howard v. Commissioner of Social Sec*., 276 F.3d 235, 240 -241 (6th Cir. 2002) (the ALJ's selective inclusion of only those portions of the report that cast Howard in a capable light suggests that he only considered part of the report in formulating his conclusion, thus, the ALJ's decision is not supported by substantial evidence).

With respect to Dr. Heidl, neither the November 2001 decision, nor the May 2006 decision, specifically address his disability findings and/or why it was rejected.  *See Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p) (ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.")  As noted above, Dr. Heidl treated plaintiff for more than three years.  Moreover, his opinion was supported by the Dr. Kramer's findings and MRI results.

With respect to Dr. Leeds, the ALJ does not specifically address his disability findings and/or why it was rejected.  Instead the ALJ selectively notes Dr. Leeds' statements that plaintiff's premature requests for narcotics were suspect and that he may have to develop a much more stringent policy about prescribing drugs.  This statement, however, referred to one incident in which plaintiff's wife stated that she accidently dumped half a bottle of Tylox into the toilet.  (Tr.  194.)  Dr. Leeds, however, refilled

plaintiff's prescription.  Notably, Dr. Leeds treated plaintiff for nearly two years, he consistently diagnosed chronic back pain, prescribed narcotics to relieve his pain, and opined that plaintiff was unable to work.

Thus, the ALJ's broad statement that the opinions of plaintiff's treating sources were not based on objective findings is not supported by substantial evidence.  Moreover, the ALJ rejected the opinion of Dr. Vivian because he did not treat plaintiff during the relevant time period.  As noted above, plaintiff's last date insured was December 31, 1999, and thus he must establish disability on or before that date.  It appears that plaintiff Dr. Vivian first treated plaintiff on January 20, 2000, after plaintiff was admitted to the hospital due to suicidal ideation.  (Tr. 212-214.)  However, the ALJ gave controlling weight to the findings of Dr. Rosenthal, who provided a psychological consultative examination of plaintiff on April 8, 2000.  (Tr. 223) (emphasis added).  Thus, Dr. Rosenthal also did not examine plaintiff during the relevant time period, yet his findings were afforded controlling weight.

Additionally, at the second hearing, the ALJ questioned Dr. Henderson regarding her "concerns…that there was a lot of drug-seeking behavior. " (Tr. 562).[7]  Dr. Henderson then replied that he would have to go through [the record] in order to render

_____

[7] As noted above, Dr. Henderson is an orthopedic specialist who served as the medical expert at the hearings.  Notably, because plaintiff had previously been found to be disabled due to his mental impairments, at the first hearing,, plaintiff stated that the medical expert appearing should be a psychiatrist rather than Dr. Henderson, who is an orthopedic specialist.  (Tr. 546-547).  At the second hearing,, the ALJ denied plaintiff's request to revise and re-open his prior claim, noting that she did not view the case as a medical improvement standard, and, therefore, called upon Dr. Henderson to continue as the medical expert, even though the majority of the medical evidence related to plaintiff's mental impairment alone.  (Tr. 552).  Thus, plaintiff maintains that the ALJ improperly put more weight on the physical aspects of plaintiff's claim.  The undersigned agrees.

an opinion in that regard, to which the ALJ responded by pointing out instances in the record she felt supported her opinion, such as positive Waddell's sign. (Tr. 562-563). Dr. Henderson testified that a positive Waddell's sign is not a fabrication of a patient's pain, but rather reflects that there is a psychological component to the patient's problem. (Tr. 571). Dr. Henderson further testified that MRI results in the record indicated that plaintiff's physical condition was deteriorating. (Tr. 573-574). At the third hearing, Dr. Henderson also testified that plaintiff's physicians treating him for his back pain enjoyed good reputations, and that plaintiff's subjective complaints of pain were supported by the medical evidence . (Tr. 583, 587-588).

In sum, the Court does not dispute that it is the ALJ's prerogative to resolve conflicts in the medical evidence. However, when that conflict involves the opinions of treating physicians and a consultative examiner and/or non-examining state agency physician, the ALJ may not ignore the law requiring special deference to the opinions of treating physicians when resolving the conflict. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Furthermore, the ALJ may not selectively consider the evidence in denying benefits. *See Howard*, 276 F.3d at 240 -241. Here, it is evident the ALJ improperly

afforded significant weight to plaintiff's alleged drug-seeking behavior and disregarded the properly supported findings of plaintiff's treating sources.  Accordingly, upon careful review of evidence as a whole, the undersigned finds that the ALJ's decision is not supported by substantial evidence.

## IV.  CONCLUSION

When, as here, the nondisability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g)*; Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher,* 17 F.3d at 176; s*ee also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher,* 17 F.3d at 176.  *See also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).  Such is the case here.

In view of the opinions of plaintiff's treating physicians and treating psychologists, plaintiff's assertions of disabling pain and depression, and his previous award of disability, there exists substantial evidence of plaintiff's disability.  Plaintiff's application was filed more than 8 years ago.  He was originally awarded benefits, and then his benefits were ceased in 1998 after he failed to attend a consultative examination.  He then filed the current application, wherein he has endured five hearings, two decisions by the ALJ, one of which resulted in a remand; and the Commissioner has yet to produce an acceptable decision.  This cannot continue.  *See Worzalla v. Barnhart,* 311 F.Supp.2d 782, 800-801 (E.D. Wis. 2004) (Social Security Administration's obduracy in complying with law warranted an award of benefits where an acceptable decision had not been produced although claimant's application had been pending eleven years and had produced three hearings and two remands by the Appeals Council.)

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner should be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**, with final judgment to be entered in favor of plaintiff, finding that he is entitled to supplemental security income with an award of benefits as of March 15, 1998; and, as no further matters remain pending for the Court's review, that this case should be **CLOSED.**


Date: March 1, 2008                                  s/Timothy S. Black
                                                     Timothy S. Black
                                                     United States Magistrate Judge

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

DANIEL FRAZEE,                                    Case No. 1:06-cv-811

    Plaintiff,                                    Judge Weber
                                                  Magistrate Judge Black

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).